UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

AGNES SIMON,

                     Plaintiff,        **MEMORANDUM & ORDER**
                                            23-CV-8508(EK)(JRC)

        -against-

NEW YORK CITY DEPARTMENT OF EDUCATION
AND KIMLYN GREIG,

                     Defendants.

------------------------------------x

ERIC KOMITEE, United States District Judge:

      Plaintiff Agnes Simon worked as a teacher at Intermediate School 59.  She was terminated in May 2021, and has not been rehired despite applying for other jobs within the New York City Department of Education.

      Proceeding *pro se*, Simon brought this action against the Department of Education and the I.S. 59 principal, Kimlyn Greig.  She asserted claims under the federal Age Discrimination in Employment Act and the New York State and New York City Human Rights Laws.

      The defendants have moved to dismiss, arguing that Simon's claims are partially time-barred; that she has failed to state a plausible age discrimination claim under the ADEA, state, or city law; and that her state and city claims are barred by the election of remedies doctrine.  As set forth below, the motion must be granted.

## I.    Background

The following facts are drawn from the complaint and assumed true for purposes of the motion to dismiss.  *Holmes v. Grubman*, 568 F.3d 329, 332 (2d Cir. 2009).[1]  After Simon served as a paraprofessional for nineteen years, the Department of Education ("DOE") hired her as a probationary teacher in 2019.  Complaint ¶¶ 1, 5, ECF No. 1.  At the time, she was sixty-two years old.  *Id.* ¶ 3.  Simon claims that, following her promotion, the defendants discriminated against her on the basis of her age in a number of contexts: in her treatment during her short tenure as a teacher, her termination, and the DOE's subsequent decisions not to rehire her.

Simon first alleges that she was given a heavier workload and less support than other probationary teachers.  *Id.* ¶ 6.  Her work assignments "kept changing without any notice." *Id.* ¶ 8.  A "teacher in her 30's," also in her probationary period, "did not have her assignment changed the way" Simon did. *Id.* ¶ 13.  Simon received "letters to file" that were "unwarranted" and a "poor observation."  *Id.* ¶¶ 14-15.

Then, in May 2021, she was terminated.  *Id.* ¶ 4. Simon was the oldest probationary teacher at the school, and the only one discontinued that year.  *Id.* ¶ 5.  She also alleges

---

[1] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

that her termination was in "contravention" of the Department's "usual policy" because she was given only thirty days' notice rather than sixty. *Id.* ¶¶ 16, 18.

When Simon was fired, she was placed on the DOE's "Inquiry List." *Id.* ¶ 27-30. Such placement essentially forecloses future employment with the DOE. *Segal v. City of New York*, 459 F.3d 207, 210 (2d Cir. 2006); *see Adams v. N.Y. State Educ. Dep't*, 752 F. Supp. 2d 420, 434 n.5 (S.D.N.Y. 2010) ("If a teacher is on the Ineligible / Inquiry List, the teacher cannot teach anywhere in New York State, earn extra wages and pension benefits or participate in professional development activities."), *aff'd sub nom. Ebewo v. Fairman*, 460 F. App'x 67 (2d Cir. 2012). Following her termination, Simon applied for, and was rejected from, other teaching jobs with the DOE. Compl. ¶¶ 21, 23-24.

On May 23, 2022, Simon filed a complaint with the New York State Division of Human Rights, which was automatically deemed dual-filed with the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 22; ECF No. 21-2 at 2.[2] She received

---

[2] Simon alleges she submitted her NYSDHR complaint on May 20, 2022. Compl. ¶ 22. But the complaint is stamped as received by the NYSHDR on May 23, 2022. ECF No. 21-2 at 2. For statute of limitations purposes, "[a] charge is not considered to be filed" until the agency "receives the charge and stamps it with the appropriate date." *Allen v. N.Y.C. Dep't of Env't Prot.*, 51 F. Supp. 3d 504, 510 n.3 (S.D.N.Y. 2014) (collecting cases); *Zabar v. New York City Dep't of Educ.*, No. 18-CV-6657, 2020 WL 2423450, at *3 n.4 (S.D.N.Y. May 12, 2020). Accordingly, this Court uses May 23 as the relevant date. In the end, this three-day distinction is immaterial.

a right to sue letter dated August 16, 2023, and filed this suit on November 14, 2023.  *Id.* ¶ 26.

## II.  Discussion

### A.    Legal Standard

To overcome a motion to dismiss under Rule 12(b)(6), a complaint must plead facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *See Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013).  This tenet, however, is "inapplicable to legal conclusions" as the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009).

A court may dismiss an action as time-barred under Rule 12(b)(6) if the defendant raises timeliness "as an affirmative defense and it is clear from the face of the complaint . . . that the plaintiff's claims are barred as a matter of law." *Sewell v. Bernardin*, 795 F.3d 337, 339 (2d Cir. 2015).

### B.    The ADEA Claims Fail

As Simon now concedes, the ADEA creates liability only for employer-entities, not individual supervisors.  29 U.S.C.

§ 630(b); *see, e.g.*, *Guerra v. Jones*, 421 F. App'x 15, 17 (2d Cir. 2011); Pl.'s Mem. in Opp'n to Mot. to Dismiss ("Pl.'s Br.") 5, ECF No. 5-6.  Thus, Simon can sue only the DOE under the ADEA; Principal Greig must be dismissed.

Moreover, for the reasons set forth below, Simon has not adequately pleaded an ADEA claim against the DOE.

1.  Most of the Challenged Acts Are Outside the
    Statute of Limitations

Before filing an ADEA claim, a plaintiff must file a timely charge with the EEOC.  29 U.S.C. § 626(d); *see also In re IBM Arb. Agreement Litig.*, 76 F.4th 74, 81-82 (2d Cir. 2023). In New York, the deadline to do so is 300 days after the discriminatory conduct occurs.  *Davis-Garett v. Urb. Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019).  This 300-day charge-filing requirement is a mandatory claim-processing rule, meaning it is not jurisdictional but must be enforced if timely raised by the defendant (as is true here).  *Fort Bend Cnty. v. Davis*, 587 U.S. 541, 543-44, 553 (2019).

Thus, when a plaintiff complains of "discrete discriminatory or retaliatory acts such as termination, failure to promote, denial of transfer, or refusal to hire," those episodes are not actionable if they occurred more than 300 days prior to plaintiff's EEOC filing.  *Davis-Garett*, 921 F.3d at 42.

This is true "even though they may be related to acts that occurred within the permissible 300-day period." *Id.*

Simon filed her EEOC charge on May 23, 2022. She alleges a number of discrete adverse employment actions. Most, but not all, took place outside the 300-day window — that is, before July 27, 2021. Indeed, the only complained-of events occurring within that window are two instances of the DOE refusing to rehire her — once in August 2021, and again in April 2023. Compl. ¶¶ 21-24.[3]

The other events Simon flags are inactionable due to the limitations period. These include the DOE's issuance of "unwarranted letters to [her] file" on June 23 and September 4, 2020 and a "poor observation" she received on September 4, 2020. *Id.* ¶¶ 14-15. (These events may be inactionable for other reasons as well.[4]) Also outside the relevant window are Simon's termination as a probationary teacher and placement on the Inquiry List, both of which occurred in May 2021. *Id.* ¶ 17.

---

[3] The April 2023 refusal to rehire post-dates Simon's EEOC complaint. This suggests that Simon may not have exhausted her claim based on that failure to rehire. *Soules v. Conn., Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 56-57 (2d Cir. 2018). But the Court need not decide this issue. The defendants do not raise it and, as noted above, exhaustion is waivable. *See Fort Bend Cnty.*, 587 U.S. at 543-44, 553.

[4] Several of the discrete acts that Simon alleges may not arise to the level of an actionable adverse employment action. *See Farina v. Branford Bd. of Educ.*, 458 Fed. App'x 13, 17 (2d Cir. 2011) (negative employment evaluation insufficient, standing alone, to be an adverse employment action); *Richard v. N.Y.C. Dep't of Educ.*, No. 16-CV-957, 2017 WL 1232498, at *11 (E.D.N.Y. Mar. 31, 2017) (collecting cases). However, the Court need not resolve whether each alleged act constituted an adverse employment action, because Simon is time-barred from relying on these acts to show discrimination.

And finally, Simon alleges that throughout her employment — so from 2019 until May 2021 — she was given a heavier workload than other teachers and not provided the same support. *Id.* ¶¶ 5-13. This conduct, too, took place before July 27, 2021.

    2.   <u>The Continuing Violations Doctrine Does Not Apply</u>

        Although Simon does not invoke it, the continuing violations doctrine provides a potential avenue for consideration of discriminatory conduct that predated July 27, 2021. The doctrine provides that when a plaintiff has experienced a "continuous practice and policy of discrimination, the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." *Washington v. Cnty. of Rockland*, 373 F.3d 310, 317 (2d Cir. 2004). Put differently, a series of separate acts may be treated as a "single composite entity" when any resulting claims "by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." *DeSuze v. Ammon*, 990 F.3d 264, 271-72 (2d Cir. 2021). At the same time, the continuing violation doctrine remains "heavily disfavored" in the Second Circuit, and courts will not apply it absent compelling circumstances. *Trinidad v. N.Y.C. Dep't of Correction*, 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006).

The doctrine does not apply here. "Where . . . plaintiffs complain of discrete acts separated in time," each such act is subject to the "usual" limitations analysis. *DeSuze*, 990 F.3d at 272. Applying this general principle, courts have consistently held that an allegedly discriminatory termination and subsequent failure to rehire comprise two discrete acts, not a continuing violation. *E.g.*, *Johnson v. N.Y. Univ.*, No. 17-CV-6184, 2018 WL 4908108, at *6 (S.D.N.Y. Oct. 10, 2018), *aff'd*, 800 F. App'x 18 (2d Cir. 2020); *Grobert v. Career Educ. Corp.*, No. 04-CV-5471, 2006 WL 721357, at *2 (E.D.N.Y. Mar. 20, 2006).

Accordingly, Simon can pursue a discrimination claim as to only two adverse actions: the DOE's failure to rehire her, first in August 2021 and then again in April 2023.[5]

3.    The Complaint Fails to State a Claim of Discrimination in the Failure to Rehire

Simon does not plausibly allege that the DOE's failure to rehire her violated the ADEA. At the motion to dismiss stage, "a [p]laintiff only has a minimal burden of alleging facts suggesting an inference of discriminatory motivation." *Levy v. Legal Aid Soc'y*, 408 F. Supp. 3d 209, 216 (E.D.N.Y. 2019). Therefore, Simon "must allege that the employer took

---

[5] Simon also pleaded a retaliation claim under the ADEA, but that claim is based on her placement on the Inquiry List. Compl. ¶ 30; Pl.'s Br. 16-17. Because Simon alleged that she was placed on the Inquiry List in May 2021, any retaliation claim based on the Inquiry List is time-barred.

adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015).

Simon alleges very little about the actual refusals to rehire her. In August 2021, she received a "call back to apply to P.S. 40," following which she was "suddenly advised that they could no longer offer [her] a position." Compl. ¶ 21. She received a "nomination" to be a substitute teacher in December 2022, but was later denied that opportunity in April 2023 "as [she] was terminated from [her] previous position." *Id.* ¶¶ 23-24. Essentially, she contends that her placement on the Inquiry List drove her inability to get rehired: it "prevent[ed]" her "from securing another job from the []DOE." *Id.* ¶ 31.

Given these sparse allegations, Simon has set out *no basis* to infer discrimination in the refusals to rehire her — at least when viewing those refusals in isolation. And caselaw clearly requires that we assess the DOE's refusals to rehire in isolation from her allegedly discriminatory termination, *notwithstanding* that those refusals are alleged to have been downstream consequences of that termination.

In *United Air Lines, Inc. v. Evans*, a female flight attendant was forced to resign after she married.  431 U.S. 553, 554, 558 (1977).  Her termination was incontestably discriminatory: United "maintained a policy of refusing to allow its female flight attendants to be married."  *Id.* at 554.  Ms. Evans did not sue to redress her termination.  Years later, after a change in policy, United rehired her.  *Id.* at 555.  But in determining her compensation, it declined to credit her for her earlier employment — even though she lost that "seniority" status only because of United's prior discrimination.  *Id.* at 555-56.

Evans did sue for that underpayment, contending "that United is guilty of a present, continuing violation of Title VII."  *Id.* at 557.  The Court framed the question presented as "whether [United was] committing a second violation of Title VII by refusing to credit her with seniority for any period prior to" her rehiring.  *Id.* at 554.

The Supreme Court accepted Evans' assertion that the airline's "seniority system gives present effect to a past act of discrimination."  *Id.* at 558.  Still, the Court held that the plaintiff failed to state a discrimination claim in connection with the seniority system.  The critical question was whether "any present *violation* exists" — a question the Court answered in the negative.  *Id*.  The seniority system, viewed in

isolation, was not *itself* discriminatory — it applied to all employees who were discharged, and in a gender-neutral fashion: Evans had "not alleged that the system discriminates against former female employees or that it treats former employees who were discharged for a discriminatory reason any differently from former employees who resigned or were discharged for a non-discriminatory reason.  In short, the system is neutral in its operation." *Id.*  For these reasons, the Court held "that the complaint was properly dismissed" by the district court. *Id.* at 557.

Here, too, Simon has not alleged that the Inquiry List itself functions differently for older applicants.  Her placement on the Inquiry List may have been the result of a discriminatory action, but she failed to timely challenge that action.  And a "discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed." *Id.* at 558.  That is the situation in which plaintiff finds herself here.

The Supreme Court returned to these issues in *Raytheon Co. v. Hernandez*, 540 U.S. 44 (2003), and reached a consistent conclusion.  The plaintiff in that case had been terminated after testing positive for cocaine use. *Id.* at 47.  Two years later he was in recovery and sought to be rehired.  The company rejected his application, though, based on its "policy against

rehiring employees who were terminated for workplace misconduct." *Id.*

The EEOC found "reasonable cause to believe" that Raytheon's refusal to rehire him occurred "because of his disability [i.e., addiction]." *Id.* at 48. The Ninth Circuit largely credited the EEOC's reading, but the Supreme Court quashed it in no uncertain terms. The Ninth Circuit, in the Court's assessment, had:

> ignored the fact that petitioner's no-rehire policy is a quintessential legitimate, nondiscriminatory reason for refusing to rehire an employee who was terminated for violating workplace conduct rules. If petitioner did indeed apply a neutral, generally applicable no-rehire policy in rejecting respondent's application, petitioner's decision not to rehire respondent can, in no way, be said to have been motivated by respondent's disability.

*Id.* at 54-55. Again, the no-rehire policy was non-discriminatory on its face — like the seniority provisions in Evans, and like the DOE's no-rehire policy here.[6] For these

---

[6] The Second Circuit has reached a similar conclusion, albeit in an unpublished opinion. In *Riddle v. Citigroup*, 449 F. App'x 66 (2d Cir. 2011), the plaintiff challenged her initial termination and the company's failure to later rehire her. The initial termination was time-barred, and the court explained that the failure to rehire was not actionable. The plaintiff had "alleged no discrete acts of discrimination" in the rehiring decision itself; instead, the complaint simply leveraged "the same alleged conduct underlying" the plaintiff's untimely claims. *Id.* at 71. In upholding dismissal, the court cited the Eleventh Circuit's holding in *Burnam v. Amoco Container Company*: "a failure to rehire subsequent to an allegedly discriminatory firing, absent a new and discrete act of discrimination in the refusal to rehire itself, cannot resurrect the old discriminatory act." 755 F.2d 893, 894 (11th Cir. 1985) (per curiam); *see also Pacheco v. Park S. Hotel, LLC*, No. 12-CV-9127, 2014 WL 292348, at *7 (S.D.N.Y. Jan. 27, 2014) ("[A] plaintiff must allege a new and discrete act of discrimination in the refusal to rehire itself.").

reasons, plaintiff has not stated an ADEA claim on which relief can be granted.

## C.    Supplemental Jurisdiction Is Declined

Simon also brought state and city law claims.  But when "the district court has dismissed all claims over which it has original jurisdiction . . . the district court need not exercise" supplemental jurisdiction.  *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 31-32 (2025).  "Instead, the court may (and indeed, ordinarily should) kick the case to state court." *Id.* at 32.  Because Simon's federal claims have been dismissed, her remaining claims are also dismissed without prejudice.[7]

## III. Leave to Amend

"[A] *pro se* complaint generally should not be dismissed without granting the plaintiff leave to amend at least once." *Grullon v. City of New Haven*, 720 F.3d 133, 140 (2d Cir. 2013).  Though it appears likely that any amendment would be futile, Simon is proceeding *pro se* and has explicitly requested leave to amend.  Pl's Br. 17.  She may thus file an amended complaint on or before October 24, 2025.  **Any amended complaint**

---

[7] Even if the Court were to retain jurisdiction over Simon's state and city claims, they would likely also be dismissed pursuant to the election of remedies doctrine.  *See York v. Ass'n of Bar of City of N.Y.*, 286 F.3d 122, 126-27 (2d Cir. 2002).  Simon first asserted her state law claims before the New York State Division of Human Rights Division.  The election of remedies doctrine would therefore likely bar Simon from later asserting the same claims before a judicial tribunal.  *Id.* at 127 & n.2.

**will completely replace, not supplement, the prior complaint. Therefore, the amended complaint must include all claims and factual allegations against all defendants, must be captioned an "Amended Complaint," and should bear the same docket number as this Memorandum and Order.**

### IV.   Conclusion

Simon's federal claims are dismissed for failure to state a claim.  Her state and city claims are dismissed for lack of jurisdiction.  If Simon does not file an amended complaint by the deadline in the preceding paragraph, the Clerk of Court will terminate this case.

The Clerk of Court is directed to mail a copy of this Memorandum and Order to plaintiff and to note the mailing on the docket.


SO ORDERED.




   /s/ Eric Komitee
ERIC KOMITEE
United States District Judge


Dated:    September 23, 2025
          Brooklyn, New York